**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 21-CR-40**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>plaintiff, )<br>)<br>)<br>v. )<br>)<br>Charles William Dexter III, )<br>)<br>defendant. )<br>) | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANTS** |

_____

The following is submitted in support of the defense's motion to suppress evidence as a result of searches conducted pursuant to search warrants. See Dk. # 39. This memorandum is intended to supplement the arguments made in support of the defense's motion for a *Franks* hearing. Because defendant's previously filed motion did not specify that probable cause was being challenged in addition to the *Franks* hearing request, this memorandum serves to address the probable cause challenges to each search warrant.

The defense does not waive any of its previous assertions that a *Franks* hearing is warranted based upon our previous showing that a serious material false statement was perpetuated throughout the five search warrants at issue.

1. <u>Search Warrant for DNA (Exhibit 1).</u>

The application for this search warrant, which was signed at 3:43 p.m. 8/14/2020

by Bloomington Police Officer Boomer, requested a warrant for a DNA sample from Mr. Dexter "in order to compare it with deoxyribonucleic acid (DNA) evidence and other evidence from the Sexual Assault Examination Kit that was collected from the victim MMV." Exhibit 1, at p.4.  Lacking, however, from the application is any factual basis from which to conclude that a DNA sample was obtained from MMV for a comparison with Dexter's DNA. The mere fact that a sexual assault examination kit existed does not provide a basis to conclude that DNA testing was done. Without the false statement regarding a Registered Predatory Offender (of which Officer Boomer was aware), and the lack of probable cause for a DNA sample from Mr. Dexter, the fruits of this search warrant should be suppressed.

2. Search Warrant for 2009 Cadillac (Exhibit 2)

The application for this search warrant was signed at 2:54 p.m. 8/14/2020 by Officer Boomer (approximately 45 minutes before the application for a DNA sample). DK. # 74-1, Exh. 2, page 6. In the search warrant application, Officer Boomer makes the assertion, which is later repeated by her and others, that the investigation began with a report of a suspect who was a Registered Predatory Offender. At the time this application for search warrant was signed, Officer Boomer had known for over four hours that Mr. Dexter was not a Registered Predatory Offender. Mr. Dexter's entire criminal record from NCIC – which is benign with no felonies – was transmitted to Officer Boomer at  10:31 a.m. August 14, 2020.

The application states that a female identified as TLRB stated that she was "driven to the hotel in a Cadillac by a black male, about 40 years old with dreadlocks, nicknamed RJ. She said there was also a light skinned, long black hair female, about 40 years old, nicknamed "Honey" in the car." The application further states that a Cadillac registered to Mr. Dexter was located in the parking lot of the Marriott Courtyard and two boxes of condoms were observed in the vehicle. Dk. # 74-1, Ex. 2, p.4.

The search warrant application was first tainted by the false statement regarding a Registered Predatory Offender, which gave the application an aura of legitimacy. As noted, Officer Boomer had actual knowledge at the time this application was made that Mr. Dexter was not a registered predatory offender. Second, the application failed to state any basis to believe that the items sought to be seized were evidence of a crime. The Fourth Amendment protects citizens against unreasonable searches that are not based upon a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). The fact that a Cadillac registered to Mr. Dexter was found in the area where a prostitution investigation began, even coupled with statements from MV and TLRB that they arrived in a Cadillac, does not give rise to a probability that evidence of a crime would be found in the vehicle to be searched. Based on the affiant's false statement and a lack of probable cause for the search, all evidence seized as a result of the vehicle search should be suppressed.

3

3. <u>Search Warrant for Dexter's LG smartphone. Exhibit 3</u>

The application for this warrant was signed at 3:58 p.m. 8/15/2020 by Bloomington Police Officer Jacob Lucas. See Dk. # 74-2. Exh. 3 p.6. Officer Lucas's application repeats the first 28 paragraphs as found in the application for search warrant for the Cadillac. Affiant Lucas then states his belief that both Dexter and Grosbusch were involved in the promotion of prostitution of a minor, MMV. See Exh. 3, p. 4. Officer Lucas sought the search warrant based on past training and experience that "electronic devices such as smart phones are often used by sex traffickers and those involved in prostitution to set up 'dates' and discuss other illegal matters." Exh. 3, p. 5. The affiant's assertions fail the particularity requirement.

The factual recitation in the application negated any suspicion that Dexter's phone was used in setting up the ad for a date. The affiant noted, as was repeated in all the search warrant applications, that the phone number on the advertisement was listed to a fourteen-year-old and when Officer Bartylla called that number, XXX-XXX-XXXX, while detaining MV, the phone in MV's possession rang. According to the affidavit in support of the application, MV told the police that "Shonda" was the one who set up the prostitution add (sic)." Exh. 3, p. 3. Thus, there was no basis for a warrant to search Dexter's phone.

Hence, based on the false statement in the application and the lack of probable cause to believe that Mr. Dexter's phone would have evidence of sex trafficking, the

search warrant fails. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983) (probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place.") Additionally, any evidence obtained as a result of this search is tainted by the fruits of the previously illegal search and the repeated false premise that the targeted suspect was a Registered Predatory Offender. The results of this search amounted to fruits of the poisonous tree from previously defective warrants. As such evidence obtained as a result of this search warrant should be suppressed. *See United States v. Wong Sun,* 371 U.S. 471, 478 (1963).

    4.  <u>Search warrant for Dexter's residence and two vehicles. Exh. 4.</u>

The application for this search warrant was signed at 12:32 p.m. 8/9/2020 by Officer Boomer. Affiant Boomer sought to search Mr. Dexter's residence and two vehicles on the property. This application for warrant is strikingly the most egregious. First, the application repeats nearly 30 paragraphs of previously filed applications. The false statement regarding a Registered Predatory Offender provided the lead-off characterization of the investigation. This application added that Mr. Dexter had been interviewed. Exh. 4, p.5. Indeed, in the very interview referenced, Officer Boomer acknowledged to Mr. Dexter that she <u>knew</u> Dexter has no significant criminal history. Hence, she knew that the reference to Registered Predatory Offender provided a false premise for the search warrant.

    Affiant Boomer asserted her basis for concluding that Dexter owned the home at

3835 6th Street North in Minneapolis where two other vehicles were observed. She also asserted her belief that Dexter was involved in the promotion of prostitution of a minor, MMV.  Affiant Boomer then asked for a warrant permitting "[a]n unannounced entry" into the residence! Exh. 4, p. 7. She stated her belief that persons engaged in the promotion of prostitution have methods to destroy evidence and sometimes maintain weapons for protection. Affiant Boomer requested permission for an unannounced entry to "eliminate the possibility of any evidence being destroyed and to maintain an element of surprise." Exh. 4, p.7.  Glaringly missing is any assertion that any individual was possibly in the residence. As was noted earlier in the application, Mr. Dexter was in custody at the Hennepin County Jail at the time of application for this search warrant was signed. *See State v. Dexter*, 27-CR-20-17843 (Dexter in custody from 8/14/2020 to 8/19/2020).

In addition to the false statement recklessly repeated by affiant Boomer, Officer Boomer failed to provide any factual basis to believe that anyone would possibly be at the residence and thus a need for an unannounced entry. Unannounced or "no knock" entries would apply to every residential search on the premise put forth by Officer Boomer in this instance, i.e., a residence could provide shelter for any vagabond or intruder so an unannounced entry would be justified. But that is not the state of the law. A no-knock warrant must be supported by a factual basis necessitating this type of entry. *See Hudson v. Michigan,* 547 U.S. 586, 594 (2006).

The Supreme Court in *Hudson* held that a violation of the unannounced or no-knock rule, although a violation of the Fourth Amendment, would not require suppression of evidence seized. 547 U.S. at 599-600. However, times have changed since 2006 when *Hudson* was decided. Changes in policies, practices and tolerances for no-knock entries have been reversed. Police officers are no longer being afforded free reign to enter homes without announcing themselves.  For example, the Minneapolis Police Department, announced a ban on no-knock warrants effective April 8, 2022; HF 3398 was introduced to Minnesota Legislators seeking an amendment to Minnesota Statute Section 626.14 to limit no-knock warrants except upon a showing of clear and convincing evidence that a risk of death or great bodily harm exists.  And seed the following commentary: Marlene Lenthany, *Is Minneapolis' ban on 'no knock' warrants enough to prevent another Amir Locke?*  NBC NewDigital April 17, 2022. The prophylactic intent of the Exclusionary Rule will best be served by rejecting as unconstitutional the warrant issued for Mr. Dexter's residence.

Officer Boomer's request for an unannounced entry was reckless, without any rational basis for that request in this particular situation. Based on the officer's recklessness in both the assertion about the Registered Predatory Offender and basis for an unannounced entry, the Government cannot rely on a good faith exception. A police officer's reliance on a magistrate's probable-cause determination and the technical sufficiency of the warrant must be objectively reasonable. In some circumstances, as the

7

Supreme Court has acknowledged, "the officer will have no reasonable grounds for believing the warrant was properly issued." *United States v. Leon,* 469 U.S. 897, 922-23 (1984). This is precisely the circumstance for the warrant issued for Mr. Dexter's residence.

Suppression is the appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Leon* at 923 *citing Franks v. Delaware*, 438 U.S. 154 (1978).

The fruits of this warrant should be suppressed. The remedial objectives of the Exclusionary Rule will most efficaciously be served by rejecting any good faith argument for the flaws in this search warrant application and warrant issued based on it. *See Leon* at 907.

5. <u>Search warrant for data from Dexter's cell phone</u>.

On August 24, 2020 at 2:42 p.m. Bloomington Police Officer Boomer signed an application for a search warrant seeking data from Dexter's cell phone with the number 612-403-9191. Exh. 5. The application also sought a warrant for the cell phone of Lashonda Grosbusch based on Officer Boomer's belief "that Dexter and Grosbusch are both involved in the promotion of prostitution of a minor." Exh. 5 at p. 4.

Once again, Officer Boomer's application recklessly repeats information she knew to be false. This application, made 10 days after the detention and interview of Mr. Dexter, inexcusably repeats false information. Based on the officer's "training and

experience" that cell phone carriers maintain a variety of data, the officer applied for a warrant for data on Mr. Dexter's (and Ms. Grosbusch's) phone from 8/13/20 – 8/14/20. Exh. 5 at p. 5. This application lacks specificity that any particular data stored on the phone would the provide evidence of a crime. A warrant that seeks unfettered access to myriad of data accessible on a smartphone amounts to a general exploratory search which violates constitutional protections under the Fourth Amendment. *Andresen v. Maryland,* 427 U.S. 463, 480 (1976).

The warrant for cell phone data lacks probable cause and specificity. The fruits of this search should be suppressed based on the taint from prior applications and warrants (fruit of the poisonous tree), false statements in the application and the general exploratory nature of the warrant.

## CONCLUSION

Based on the foregoing, the defense persists in its requests for a *Franks* hearing (Dk. # 39) and further requests that all evidence obtained as a result of the foregoing search warrants be suppressed.

Date:  April 22, 2022                                      Respectfully Submitted,


                                                           */s/ deborah ellis*
                                                           Deborah Ellis
                                                           101 E. Fifth Street, Suite 1500
                                                           Saint Paul, MN 55101

[deborahellis2626@gmail.com](mailto:deborahellis2626@gmail.com)
651-288-3554